UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

RANDY LOUIS LAYTON,

        Plaintiff,

   v.                                              19-CV-832
                                                      DECISION & ORDER

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

---

On June 24, 2019, the plaintiff, Randy Louis Layton, brought this action under the Social Security Act. He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled. Docket Item 1. On November 22, 2019, Layton moved for judgment on the pleadings, Docket Item 8; on January 21, 2020, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 9; and on February 11, 2020, Layton replied, Docket Item 10.

For the reasons stated below, this Court grants Layton's motion in part and denies the Commissioner's cross-motion.[1]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the

---

[1] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

**I.   ALLEGATIONS**

Layton argues that the ALJ erred in basing his Residual Functional Capacity ("RFC") determination on his own lay opinion. Docket Item 8-1 at 1. This Court agrees that the ALJ erred and therefore remands the matter to the Commissioner for development of the record and proper consideration of Layton's RFC.

**II.   ANALYSIS**

"Although the RFC determination is an issue reserved for the [C]ommissioner, an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings."

*Thomas v. Comm'r of Soc. Sec.*, 2019 WL 2295400, at *2 (W.D.N.Y. May 30, 2019) (quoting *House v. Astrue*, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013)).  Thus, "where the transcript contains only diagnostic evidence and no [supporting] opinion from a medical source about functional limitations . . . , the ALJ [generally] must recontact [a treating physician], order a consultative examination, or have a medical expert testify at the hearing."  *Skupien v. Colvin*, 2014 WL 3533425, at *6 (W.D.N.Y. July 16, 2014) (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp.2d 908, 913 (N.D. Oh. 2008)); *see also Thomas*, 2019 WL 2295400, at *2 (explaining that "an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence" (quoting *House*, 2013 WL 422058, at *4)).

Here, the ALJ concluded that Layton had the RFC to

> perform light work[2] . . . except he can frequently climb ramps and stairs; no kneeling, crawling; occasional crouching and squatting; no climbing ladders, ropes or scaffolds; no work around hazards such as unprotected heights or dangerous moving mechanical parks; no driving; no work on uneven ground; and occasional right foot controls.

Docket Item 6 at 20 (footnote added).  But the ALJ did not rely on any medical opinions in determining Layton's RFC.  *See id.* at 23.  More specifically, the ALJ "accorded little weight" to the opinion of Phyllis Bessey, FNP-C[3]—the only opinion in the record on

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. §§ 404.1567(b); 416.967(b).

[3] Nurse practitioners are not considered "'acceptable medical sources' . . . whose medical opinions may be entitled to controlling weight."  *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (citing 20 C.F.R. § 416.913(a) and SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2009)).  They are instead deemed "other sources," whose opinions the ALJ is "free to discount . . . in favor of the objective findings of other medical

3

Layton's functional capacity.[4]  And for that reason, the ALJ necessarily relied only on his own lay judgment.  *See Sherry v. Berryhill*, 2019 WL 441597, at *5 (W.D.N.Y. Feb. 5, 2019) ("The Court cannot conclude that there was substantial evidence to support the ALJ's RFC determination that [the] plaintiff was capable of light work with restrictions and is left without a clear indication of how the ALJ reached the RFC determination without resorting to impermissible interpretation of raw medical data.").

For example, the ALJ found that Layton had "the following severe impairments: obesity, bilateral degenerative arthropathy in the elbows, mild lumbar spine degenerative disc disease, degenerative disc disease and mild dextroscoliosis in the thoracic spine, cervical spine spondylosis with right C3-5 formanical encroachment[,] and right knee pathology."  Docket Item 6 at 19.  Given those serious medical issues, it is not at all clear how the ALJ was able to determine from the bare medical data that Layton would be able to perform "light work," which requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour work day" or "sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls."  *See* SSR 83-10, 1983 WL 31251, at *5-*6 (Jan. 1 1983).  It is likewise unclear how the ALJ determined that Layton could "frequently climb ramps and stairs" and "occasional[ly]

---

doctors."  *Id.* at 108-09.  But the ALJ still must consider and explain the weight assigned to the opinions of "other sources" that "may have an effect on the outcome of the case," 20 C.F.R. § 404.1527(f)(2), in a way that "allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning," SSR 06-03P, 2006 WL 2329939, at *6 (Aug. 9, 2006).

[4]  On July 20, 2018, Nurse Practitioner Bessey opined that Layton "could not walk 50 feet without stopping to catch his breath, could not stand or walk for any length of time due to chronic knee pain and neuropathy, exhibits out of control diabetes with diabetic polyneuropathy complications[,] and remains 100% disabled."  Docket Item 6 at 23.

4

crouch[ ] and squat[ ]" notwithstanding his severe spine and knee impairments. *See* Docket Item 6 at 20; *see also Thomas*, 2019 WL 2295400, at *2 (remanding where "[a]ll of the records in the case consist of clinical notes that have no medical source statements and no other assessments of [the] plaintiff's exertional and non-exertional abilities," yet "the Commissioner crafted a very specific RFC that included references to ladders, ropes, and scaffolds"). Nor is it clear how the ALJ determined that Layton could use "occasional right foot controls" despite his severe "right knee pathology." *See* Docket Item 6 at 19-20; *cf. Agostino v. Comm'r of Soc. Sec.*, No. 18-CV-1391-FPG, 2020 WL 95421, at *3 (W.D.N.Y. Jan. 8, 2020) ("It is unclear to the Court how the ALJ, a layperson, could make these sorts of conclusions and inferences. It is simply not a common-sense inference that [the plain's lumbar and knee problems, in conjunction with her obesity, would render her able to stand for 45 minutes at a time so long as she could sit for one to two minutes. That is a more complex medical determination that requires a level of expertise that the ALJ does not have.").

The Commissioner argues that the ALJ's RFC is supported by substantial evidence because Layton "admitted to daily activities consistent with a limited range of light work." Docket Item 9-1 at 10. More specifically, Layton "regularly performed woodworking, shopped for groceries, cooked, and mowed the lawn. He also cared for his grandson a couple of days per week, used a four-wheeler to pull down wood for his woodworking, rode a four-wheeler with his grandson, barbequed, vacuumed, and washed dishes." *Id.* (internal citation omitted).

But as Layton observes, his testimony about his daily activities does not support the ALJ's RFC. *See* Docket Item 8-1 at 9-11; Docket Item 10 at 3-4; *see also Miller v.*

5

*Colvin*, 122 F. Supp. 3d 23, 29 (W.D.N.Y. 2015) (remanding where "[t]he ALJ did not explain how the performance of these limited activities of daily living translates into the ability to perform substantial gainful work . . . in a typical competitive workplace environment"). In particular, none of the daily activities about which Layton testified support the conclusion that he could "stand[ ] or walk[ ], off and on, for a total of approximately *6 hours* of an 8-hour work day," as generally is required for light work. *See* SSR 83-10, 1983 WL 31251, at *5-*6 (emphasis added). Nor is it reasonable to infer from Layton's activities of daily living—none of which appear to involve climbing ramps or stairs—that Layton can "frequently" perform those functions. *See* Docket Item 6 at 20; *cf. Miller*, 122 F. Supp. at 30 (explaining that the "[p]laintiff's ability to fix some cars in a garage, by himself, for an unspecified duration of time, does not undermine [a medical] opinion regarding [his] limitations in terms of performing work-related activities on a full-time basis in a competitive work environment"). On the contrary, Layton testified that he "does not do any climbing," as the ALJ himself acknowledged. *See* Docket Item 6 at 22.

The Commissioner also assets that Layton "failed to meet his burden of proving he could *not* perform this RFC." Docket Item 9-1 at 12 (emphasis in original). More specifically, the Commissioner argues, Layton "failed to show, with objective evidence, that additional functional limitations were warranted." *Id.* "But given the lack of any competent medical opinion, the Court, like the ALJ, is not in a position to assess the extent of functional limitation posed by [Layton]'s impairments." *Agostino*, 2020 WL 95421, at *4 (citing *Reyome v. Comm'r of Soc. Sec.*, No. 16-CV-6446, 2018 WL 3721159, at *10 (W.D.N.Y. Aug. 6, 2019) (rejecting similar argument by the

Commissioner—namely, that failure to review evidence related to shoulder injury was harmless because there was "no medical opinion evidence in the record concerning the effect . . . of the shoulder injury on [claimant's] ability to work")).  "As such, the Court cannot presently conclude that a finding of not disabled is the only reasonable conclusion to be drawn from the record." *Id.*

Moreover, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel.'"  *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)).  Here, once the ALJ rejected Nurse Practitioner Bessey's opinion, there were indeed such deficiencies, and the ALJ therefore was obligated to develop the record regarding Layton's functional capacity. *See Sobolewski v. Apfel,* 985 F. Supp. 300, 314 (E.D.N.Y. 1997) ("The record's virtual absence of medical evidence pertinent to the issue of plaintiff's RFC reflects the Commissioner's failure to develop the record, despite his obligation to develop a complete medical history.").  For example, the ALJ could have obtained an opinion from a consultative examiner, had a medical expert testify at the hearing, or both.

"[T]he absence of a properly grounded RFC constitutes legal error that requires remand regardless of any underlying raw data." *Thomas*, 2019 WL 2295400, at *2. Here, the ALJ's reliance on his own lay judgment to determine Layton's RFC constituted just such an error.  *See Perkins v. Berryhill*, 2018 WL 3372964, at *4 (W.D.N.Y. July 11, 2018)) ("Without reliance on a medical source's opinion or a function-by-function assessment connecting the medical evidence to the RFC, the ALJ's decision leaves the Court with many unanswered questions and does not afford an adequate basis for

7

meaningful judicial review."). This Court therefore remands this case so that the ALJ may solicit a medical opinion regarding Layton's functional capacity[5] and otherwise address the deficiencies noted above.

## CONCLUSION

The Commissioner's motion for judgment on the pleadings, Docket Item 9, is DENIED, and Layton's motion for judgment on the pleadings, 8, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: September 8, 2020
 Buffalo, New York


 　*/s/ Lawrence J. Vilardo*
 LAWRENCE J. VILARDO
 UNITED STATES DISTRICT JUDGE

---

[5] Alternatively, the ALJ could reconsider Nurse Practitioner Bessey's opinion or recontact her to obtain additional information.